Page number 18-1195, American Federation of Government Employees National Council, 118-ICE Petitioner v. Federal Labor Relations Authority Mr. Kalkoff for the petitioner, Ms. Matko for the respondent, and Mr. Busa for the intervener. Can we find that the practice was unlawful or can we find that the agency reasonably believed that the practice was unlawful? So for us to win, all you need to find is this is the NOVA review of the authority's decision regarding OPM's regulations. So you have a NOVA review of whether they are correct or not that this practice was contrary to law. So we don't look at the agency's interpretation of the OPM statute and the statute regarding AUO and the OPM regulations. You would look at the statute regulations and determine whether or not the prior FLRA case law, which for 30 plus years, found that there was discretion of the agency to determine whether or not days were excluded. Because the agency had that discretion, that was a negotiable subject. And that's exactly what happened up until 2015 when the agency unilaterally made a decision that excludable days that weren't explicitly listed in the regulation were no longer going to be allowed. Yeah, I mean, I guess I understand your, I take your point, but it just seems a little odd because it's not like they made a decision in a vacuum. I mean, there was a lot of discussion about the fiscal impact. There were two separate investigations. And then there was a mandate from their mother agency or parent agency, so to speak, to fix this problem. And they looked at an OPM regulation, which is the agency that has the authority to interpret the statute. And they construed it as requiring them to fix the problem in the way that they did. Well, what they didn't do was discuss it with the union or negotiate over it with the union, even though they had ample time to do so. They look at an OPM regulation, which is found in 5 CFR Section 550.154C, which says that there are three specific days that must be excluded. It doesn't discuss any other days, the excludability of those days, and what the agency did here, and the authority did the same in this case, is read that as precluding other days from being excluded, but neither the statute nor the regulations say that. But the difficulty, I think, is once OPM, which has the authority to do that, has done that, you agree, don't you, that if they validly do that, based on the idea that they don't think they have legal latitude to do anything else, that that eliminates the bargaining responsibility, doesn't it? Once something's no longer a lawful choice for the agency, it can't be bargaining with the union to potentially bring that choice back onto the table. Well, certainly we agree that if something's unlawful, the union can't bargain over it. And I think you have to look at the regulation and determine whether that regulation makes those things unlawful or not, and we contend that it does not. It says that those three days must be excluded. If the union were to propose something that was contrary regarding those three types of days, that would be contrary to law. So we agree that they can't negotiate over these three types of days, but those three types of days are not what's at issue. We have done a review of the Federal Labor Relations Authority, but not of the OPM interpretation. So the OPM doesn't discuss in the 2002 preamble to the regulations issued shortly after the September 11th attacks, they don't discuss whether other excludable days are legal or illegal. They just say that they were doing this to require that these days be excluded, because the employees receiving AUO could potentially lose pay. It doesn't say that they would definitely, but that they could. But the 1997 guidance is the bigger stumbling block, is it not? Because their OPM says no on other kinds of excludable days, any excludable days. First, the OPM guidance should be of little import to the Court, because it's not a statute, it's not a regulation, and it's not entitled to Chevron deference. The type of deference that it's entitled to is set out by the Supreme Court in Christensen v. Harris County, and in that case, just as Thomas explained, in a case involving the Fair Labor Standards Act, that agency documents like policy statements, manuals, enforcement guidelines, in that case an opinion letter, are not entitled to Chevron deference, instead are entitled to Skidmore deference, but only to the extent that they have the power to persuade. And here, the 1997 OPM guidance does not have the power to persuade. As I take the government's position, they're arguing that the OPM interpretive guidance is interpreting the then extant regulation and saying, under that regulation, there is no authorization to exclude days. So they do have the authority, and we defer to their understanding of their regulation. And that has to be their position, right, because then they change the regulation to allow exclusion of certain enumerated days. But they change the regulation to require the exclusion of certain enumerated days. But so, and I understand your position is just requiring that is not the same as prohibiting everything else. But at the earlier stage, when in 1997 OPM was saying, as a matter of interpreting its own then existing regulations, there is no authority, period, for excluding days where this overtime is not actually worked. Why doesn't, why isn't that the real hurdle for you, and what's, how do you clear it? Well, a few things. One, the parties never read that guidance in between 1997 and 2015 as doing what the agency now says the guidance says. Additionally. Well, OPM did. OPM may have, but the OPM guidance also says later on within it that there is a permissible way to ensure that an employee's AUO rate of pay is not adversely affected. But that's not what you're arguing for. Well, I think it is, because we're arguing that days, periods of time should be excluded from AUO calculations. If you look at the OPM guidance, it talks about not being able to exclude hours, but then talks about being able to exclude longer periods of time. Right. They're saying, fine, we're going to deal with the beginning and the end of the period of measurement. I know I'm not using the right technical term, but, you know, we're going to start a new period of examination from the end of your FMLA leave, but that is not the same as, you know, last week you took a sick day, next week you're taking a personal day, and we're going to come, we're going to exclude all those. That's a different request. Well, we don't believe it's a different request, because once OPM has acknowledged that there is authority to exclude time from the computation period, then that makes that within the discretion of the agency, and once it's within the discretion of the agency, in accordance with the FLRA's case law from 1986 and later up until this case, it becomes a negotiable subject. But it seems that a fair reading of that OPM guidance is that certain things are within the discretion of the agency and certain things aren't. And the things that are within the discretion of the agency, or somebody's on some extended leave, perhaps because of a medical issue or a disability issue, et cetera, they shouldn't be prejudiced, and you can exclude that, but not just, you know, a day off here, a day off there. And so it doesn't have to be that once, you know, there is an exception, then everything is up to the agency's discretion, does it? Well, first I would add that there are extended periods that they're saying are not allowed to be excluded now. For instance, military leave. If an employee is gone for several weeks on military leave, the agency does not allow them to exclude that time, and then the employee loses out on their AUO because of taking military leave. So I think that's entirely consistent with the OPM guidance, that they should be able to exclude that military leave. Additionally, I think that if you look at the Christensen v. Harris County case, in that case, under the FLSA, Justice Thomas was looking at whether an employer can require employees to take days off when they have a comp time. And the court looked at the regulation that said that employees have to be able to use comp time when they ask for comp time. And the Department of Labor in that case said, well, if they have to be able to use it when they ask for it, that means the employer can't require them to use it. And the Supreme Court rejected that argument, saying that that opinion letter was not entitled to deference. And we think that's basically the same thing as what has happened here. The OPM regulations, especially CFR section 550.161D, require agencies to look at not solely the time that these employees have worked AUO going backwards, but also look at the expectation going forward. And so when you exclude periods of vacation or periods of military leave, that allows them to look at the time going forward, so that they're not losing out on AUO because of that. So additionally, I would add that in 1986, it's important that the FLRA looked at this specific issue under the regulations that were at issue that were still in place in 1997, and said at that point that while a union can't negotiate whether a position is covered by AUO, they have the discretion to negotiate over the AUO procedures, and that includes excludable days. And that's what the union and the agency did here. And the authority then rejected the agency's argument in that case that they have to look at the regulations and can only exclude days explicitly listed in the regulations. So that was the FLRA's position in 1986. They reaffirmed that position in 2015 and 2016 in a case involving the same parties here. And those cases, as I'm sure the authority will point out, were later vacated, but they were vacated on different grounds. They were vacated due to the passage of the Administrative Leave Act that was passed during the pendency of the appeal. And this court remanded, and the union withdrew the negotiability appeal. Here, administrative leave is not an issue at all in these proposals, and so there is no reason that the analysis in the 2015 and 2016 decisions that explicitly looked at the OPM guidance and looked at the language in the guidance and found that it did not preclude the excludability of days under the regulations, why that analysis shouldn't be reviewed by the court here. The authority also issued another case in 2016 involving the Border Patrol, where it explicitly said that the employees in that case, who were employees on 100% official time, could not continue to receive AUO and exclude days because those employees had no expectation that they were going to continue working AUO going forward. That's quite simply not the case here. Bargaining unit employees of the union, the law enforcement employees of the union, who have lost AUO due to the agency's unilateral actions without bargaining, all are continuing to work AUO when they're in the field. They are not, like the employees in the 2016 Border Patrol case, working no AUO. So that case additionally supports our position. I was just wondering, if these employees are not entitled to AUO, can they get regular overtime for this time? That has to be pre-approved, right? Employees who receive AUO are only entitled to additional overtime under certain circumstances, one of which is regularly scheduled overtime, which has to be scheduled in advance of the administrative work week. So while an employee, their AUO rate may drop from 25% to 20% or 15% or 10% due to not being able to exclude a period of leave, when they get back in the field, they're still going to be working their AUO, working two or more hours a day of AUO and receiving a lesser percentage. And you're not making, as I read your briefs, you're not making a claim for impact and implementation bargaining, which you could theoretically be entitled to, even if the union's request is for something that's now unlawful under the rule. You're just not asking for that. The agency only offered post-implementation bargaining, and the union believes that full pre-implementation substantive bargaining is appropriate in this case because the decision was in the discretion of the agency, and when it's in the discretion of the agency, the proper thing for the agency to do, if it wished to change their practice, was to negotiate it with the union. But impact and implementation bargaining could also have been pre-implementation, but you just haven't sought that. Well, they were given no opportunity before implementation to bargain at all. I understand as a factual matter. I'm just asking as a legal matter. You're not arguing for that. No, what the union sought was substantive bargaining because they sought that the same days that have been excluded previously continue to be permitted to be excluded. Can I just ask you one more question? Zooming all the way out and just looking at this statute, how is it consistent with the purpose of this statute, which is this unpredictable, administratively uncontrollable overtime is to be compensated? How is it consistent with that statute to say, well, you're going to factor in some quotient of administratively unpredictable overtime to time you're not even at work, that you're on vacation, that you're having a medical procedure, that you're doing military, that you're doing something completely different? It just seems one might argue that it's inconsistent with the very concept of compensation for extra hours that were worked that couldn't have been anticipated to anticipate and allocate, in effect, a quotient of that two days that weren't worked. Well, the OPM has acknowledged that excludable days are not precluded by the statute by requiring three types of excludable days. So OPM is not taking the position that it's inconsistent with the statute that there be excludable days at all. Additionally, what the statute says at 5 U.S.C. section 5545C2, is that the rate is determined by taking into consideration the frequency and duration of irregular, unscheduled overtime duty required in the position. So it does not preclude excluding any of this time. And when this time is excluded, what you're focusing on is the time that the employee is in the position of performing work in the field and performing work that allows them to work and earn AUO. So I see my time has expired. All right. Thank you. Thank you. Ms. Macco. May it please the Court. I am Tabitha Macco and Rebecca Osborne. We represent the authority, the respondent in this matter. The authority addressed one question in this case, and that was whether the agency committed a ULP, an unfair labor practice in violation of section 7116A5 of the Federal Labor Statute, when it unilaterally changed its illegal AUO excludable days policy and offered post-implementation bargaining to the union. May I also add, there is no proposal at stake in this case. What happened below was that the union grieved the agency's failure to offer pre-implementation bargaining, and it's an arbitration award that's before us, not any sort of proposal wording. The authority correctly determined that the agency did not commit a ULP, when after years of federal investigations and congressional interest, the agency changed its AUO policy to make that policy comply with the law and notified the union and offered to engage in post-implementation bargaining. As the authority found the agency did not commit a ULP, the authority set aside the entire erroneous arbitration award. Therefore, we ask this court to deny the union's petition for review. Under the Federal Labor Statute, the agency has no duty to bargain over any matter to the extent it is inconsistent with a government-wide rule or regulation. The authority took the position in the vacated decisions that this was permissible. And what's your strongest authority for the notion that those decisions vacated on other grounds lack precedential effect? My understanding was that they would have precedential effect for the substantive grounds. Your Honor, I would direct your attention to the wording. We call it AFGE 2018. That's the way it's cited in our brief below. The authority spent an entire decision discussing the vacation of these two cases, what we're now calling AFGE 2015 and 2016. They were vacated in their entirety. There were no carve-outs. And I would direct the court's attention in particular to when the authority is discussing, I'm not going to call it an agreement, but both sides were amenable to allowing the union to withdraw its underlying negotiability petition, because in that case it was a negotiability petition, and the agency asked for the decisions of AFGE 2015 and 2016 be vacated. In footnote 5, we noticed, we pointed out, that the agency would lose its ability to appeal. AFGE 2015 and 2016 would be frozen. They would remain there if the union was simply able to withdraw its petition and nothing further happened. The authority recognized that incongruity and vacated both of those decisions in their entirety. If the authority was going to carve out a particular reading or a particular section, it would have done so here, and it didn't. Neither party filed an appeal to this decision, so apparently everyone agreed that the authority articulated its promise adequately. In the case now before the court, the agency's prior AUO excludable days policy conflicted with OPM's regulations. The authority read the plain text of 5 CFR 550.154C, which directs the reader to 550.162C and G. These regulations provided for only three categories of time that may be excluded from what they called the review period, and those categories all related to temporary assignments, not to the use of paid leave. Therefore, the authority reasonably determined that the agency's prior practice of allowing paid leave to be excluded from the calculation of the AUO rate was contrary to OPM's regulations. After the authority itself interpreted the plain text, then the authority deferred to OPM's published guidance for the interpretation of these same regulations, and that is, of course, CPM 97-5. Yes, OPM issued this guidance in 1997 to clarify that the regulations did not permit the exclusion of paid leave, such as annual or sick. It may direct the court's attention to finding four of CPM 97-5, which states there is no authority to reduce the number of weeks by subtracting hours of paid leave. OPM's published interpretation of its very own regulation is certainly controlling, regardless of its age. But don't they go on to say that there could be some circumstances where paid leave could be excluded? What OPM described in this guidance was that while there are only the three there was still a review period, and OPM said that the agency's had some flexibility in establishing the review period, for example, to provide for employees who've had family medical leave act, FEMLA. That's a tough example because the guidance says that this permitting of gaps in the examination period will accommodate the family medical leave act requirement that people not be left worse off by taking their FEMLA leave. But FEMLA leave is also available on an intermittent basis. So if you had, for example, to do kidney dialysis, you could take a day every two weeks or however, you know, whenever you needed to take it. And if the agency's position was, or OPM's position was that you had to reconcile the two, then it would seem like that would require more excludable days rather than just the reframing of the examination period. As Your Honor pointed out prior, AUO is meant to cover administratively uncontrollable time. So by definition, the rates are going to vary. The OPM's guidance doesn't guarantee that there would be no impact on employees, just it would lessen the impact by varying the review period. OPM was certainly aware of Family Medical Leave Act and what has been referred to as well as military leave under USERRA. USERRA was passed in 1994. So it would lessen the impact. But there is no guarantee anywhere that any employee's AUO rate could never vary because if it never varied, then it's not administratively uncontrollable over time. Once the authority found the conflict between ICE's prior AUO policy and the regulations, the authority then went on in its decision to apply its own very well-established precedent to conclude that the agency had no statutory duty to engage in pre-implementation bargaining. The authority has consistently held that an agency does not have a duty to bargain prior to changing an illegal practice in order to bring that practice into conformity with the law. This Court has twice come to the same conclusion in cases issued in 1989, that's the Patent Office case, and 1986, that's the AFGE Local 1923 decision. Authority decisions cited in our brief go back to 1982. Therefore, deference to the authority's reasonable interpretation of the labor statute, which is given to the authority to interpret that ICE did not commit a ULP, is entirely appropriate. Finally, the authority's decision honors the purpose and intent of the statute that we are charged to interpret. The authority's decision does not deny the union the ability to bargain. Concerning the AUO policy, our decision only addressed when that bargaining must take place. Moreover, the authority's decision supports collective bargaining in the federal sector because it provides a bright-line rule that will facilitate consistency and stability in bargaining relationships. We ask this Court to deny the union's petition. Thank you. Mr. Busa? Good morning, and may it please the Court. Joe Busa on behalf of the Intervenor Agency. I'm not going to go on at length in an affirmative argument. The key question here is, did the agency have any freedom of movement to adopt any method of calculation other than the simple average that OPM requires? And the simple answer is no. You can see that in the guidance. You can also see that in the regulations. And the authority properly considered both in answering this question. I want to address a couple of topics that came up in the colloquies of my colleagues in the hope that I can offer some clarification. Judge Pillard, you asked about the fundamental purpose of the regulations and the statute here. And the fundamental purpose is to calculate the actual average of AUO hours that employees are working, not a gerrymandered, artificially increased average by picking and choosing periods of time when employees aren't actually working any AUO. The goal is to get an accurate count, and the regulations appropriately do that. And typically the rate at which employees are compensated is at or below their ordinary effective hourly rate. Is that not correct? I'm sorry, I might not be understanding this. Brackets of hours of AUO entitle you to percentages of your salary as AUO pay. That's exactly right. And those go basically up to pro rata increase, but they're not close to, for example, time and a half. I think that might be right, although I'd want to run the calculations, and it might depend on a number of factors that I haven't fully thought through. The key here, though, is that the statute and the regulations contemplate that it's not an hour-for-hour compensation that's going on here. It's sort of rough justice. That's why there's a stepwise function of the rates of AUO compensation. I think that's exactly the point, is that it makes it more plausible that Congress did consider some kind of play in the joints, some kind of approximation, rather than an hour-for-hour, because it seems a little odd that one would be getting only for the overtime hours actually worked, and yet have this bracket system where you get basically underpaid proportionately for the overtime hours. Well, one, to begin with, I think all of this discussion really goes to an issue that's not properly before the Court. I just want to highlight that before getting into it. The union here hasn't raised a Chevron challenge to OPM's interpretation. It simply says OPM doesn't have the interpretation it clearly has in the guidance. But to get at that question just sort of more directly, I mean, I think it's the statute that says that we're compensating employees who perform substantial amounts of AUO work. So we're already told by the statute that if there's going to be some types of AUO work, you're not going to get compensated for at all. Now, OPM has cashed that out in sort of three hours' average threshold to even be eligible for AUO compensation. So there's no doubt that OPM has a reasonable construction of the statute in saying, look, there's going to be some play in the joints here, there's going to be rough justice, but we're really going for an accurate count of the AUO you're working above that substantial threshold. No one says you couldn't have the stepwise function that OPM has implemented here in .154A. And again, that issue is just not properly before the court here, so I don't think you need to address it. Moving on, there was a discussion about the 2015-2016 official time cases, and there was a suggestion that they were vacated for a specific reason about administrative leave. They're actually vacated because the government lost its opportunity to continue to press in front of this court. It's disagreement with the authority's resolution of the exclusion issue in that case on Munsingware grounds. That's why we asked for a vacateur, and that's why the authority granted it. And so as for the persuasive value of those opinions, they rest entirely on this hours-days distinction, which our brief goes into many reasons as to why it's not an adequate construction of the guidance. There's really no serious question what OPM thinks the government-wide rule is here, and that's why ICE had no freedom of movement. And finally, to address the issue, one issue that came up in the guidance, there is this important distinction between within-period exclusions. That's what this case is about. There's a separate question resting on sort of a separate statutory hook about window shifting. The separate statutory hook there, sorry, regulatory hook, is in 550161D that talks about historical review periods and F of that same provision, which says you're going to revisit your determination about calculating rates of AUO pay at, quote, appropriate intervals. So the regulations there do leave some room for adjustment. They don't say you can't have a gap of a certain amount of time between review periods or a variance of the length of a review period. That's what the window shifting on page 683 of the Joint Appendix is getting at, as I believe this Court properly understands. A question came up about how we're going to handle window shifting for intermittent FMLA leave, and I just want to make clear that this grievance was not predicated on that specific type of as-applied challenge at all. And I think that would just come up if there was ever an instance in which an employee believed that their specific rate of AUO pay had suffered because of, say, a lack of window shifting for that kind of intermittent leave. I think that could be addressed in an appropriate future proceeding, but it has nothing to do with what's at stake here. The union's argument to this Court is simply that, you know, they get that ICE has the freedom of movement to exclude whatever it wants to from within a review period. And I think as this Court understands, that is simply not the case under the guidance of page 682. There's a reference to compensating people via more appropriate forms of overtime, and it's the same question that I asked counsel for the union. That would have to be pre-approved to get more appropriate forms of overtime, no? So there are multiple types of overtime, Your Honor. I don't think I'm going to have a detailed answer to your question. You know, for normal overtime, yes, it's going to have to be pre-approved. There's other types of premium pay available to different types of employees. You know, there's law enforcement availability pay, so-called LEAP premium pay. I don't actually happen to know how that cashes out in a case like this, whether someone who, say, gets decertified from AUO could get compensated for the same types of hours under other forms of premium pay. I just don't know the answer to that question. You know, the reason I don't know is because, you know, the union's never sort of made that a point of contestation, and so unfortunately I just don't have an answer for you. But I don't think you're going to need to address it in resolving this matter. If there are no further questions, we ask that you deny the petition for review. Thank you. Does Mr. Kotloff have any time left? All right.  Thank you, and may it please the Court. In their argument, the authorities counsel set out that there's no proposal at issue here. I don't think that's really an accurate statement, because the union did propose that the status quo be maintained and that the agency not implement these changes prior to bargaining, and the agency rejected that, saying that the status quo was contrary to law, which obviously the union disagrees with. So there is a proposal that things return to the way that they were, and that's what we're asking you to address, which is whether that proposal was contrary to law or not. Additionally, the authorities counsel talked about the plain text of 154C and 162C and G, precluding excludable days. There's nowhere in the text that it says that the days are excluded, and to the contrary, the OPM guidance talks about flexibility and changing the review period. That's exactly what excludable days do. They change the review period. They remove time from the review period. And so to the extent that the OPM guidance addresses that, it is consistent with the law. So that's why we ask that the decision of the FLRA be overturned. Thank you. Thank you. Stand, please.
judges: Henderson, Pillard, Wilkins